# In the United States Court of Federal Claims

| | |
|---|---|
| PITNEY BOWES, INC.,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 25-639<br>(Filed: October 26, 2026) |

*Robert John Kovacev*, Miller & Chevalier Chartered, Washington, D.C., for Plaintiff.

*Jason Bergmann*, U.S. Department of Justice, Washington, D.C., for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

Plaintiff Pitney Bowes, Inc., seeks interest on tax overpayments that the Internal Revenue Service ("IRS") applied to the company's Mandatory Repatriation Tax ("MRT"), I.R.C. § 965, liability. Compl. ¶ 1, ECF No. 1. The MRT is a backward-looking tax, imposed in 2017, to facilitate the United States's transition to a new system for taxing foreign holdings. Pitney Bowes elected to pay its MRT liability in eight yearly installments. On its 2017 tax return, Pitney Bowes requested a full refund of its tax overpayments, but the IRS retained a portion of the overpayments and applied them to fully satisfy the MRT.

Pending before the Court is an issue of first impression.[1] In its Motion for Partial Summary Judgment, Pitney Bowes argues that it should receive interest on its installments based on prior broad interpretations of the tax code's interest provisions. Pl.'s Mot. for Partial Summ. J. ("Mot."), ECF No. 17. The Government also brings a Cross-Motion for Summary Judgment. Def.'s Cross-Mot. for Summ. J. ("Cross-Mot."), ECF No. 19. The Government contends that no waiver of sovereign immunity allows for the interest Pitney Bowes seeks and that MRT liability was part of Pitney Bowes's entire 2017 income tax liability. *Id.* at 6–7, 11. Therefore, the 2017 overpayments were appropriately applied to satisfy Pitney Bowes's total MRT liability.

Pitney Bowes raises legitimate concerns about the short turnaround between Congress's enactment of the 2017 Tax Cuts and Jobs Act, which imposed the MRT, and tax due dates soon

[1] At least two other cases involving the same question of law are pending at this Court. *See United Parcel Serv., Inc. v. United States*, No. 25-641 (Fed. Cl. Apr. 14, 2025); *Wells Fargo & Co. v. United States*, No. 26-557 (Fed. Cl. Apr. 15, 2026). *Wells Fargo* is stayed pending judgment both in this case and in *United Parcel Service*. *See* Order, *Wells Fargo*, No. 26-557, ECF No. 9.

thereafter. Delayed guidance from the IRS exacerbated this time crunch. The burden of these policy choices fell on taxpayers. But ultimately, the statutory text and the caselaw do not require interest on Pitney Bowes's alleged tax overpayments, as they were properly applied to taxes owed in 2017. The Court therefore **GRANTS** Defendant's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## I. Background

### A. Facts

Pitney Bowes filed suit against the United States on April 14, 2025, seeking to recover interest on tax overpayments. Compl. ¶ 1. Pitney Bowes is a Delaware corporation. *Id.* ¶ 4. Because Pitney Bowes, before 2017, "was a shareholder in certain foreign corporations with previously untaxed earnings and profits, [it] was subject to the MRT." *Id.* ¶ 23.

#### 1. Mandatory Repatriation Tax

On December 22, 2017, Congress enacted the MRT as part of the Tax Cuts and Jobs Act ("TCJA"), Pub. L. No. 115-97, 131 Stat. 2054 (2017). The MRT, located in Section 965 of the Internal Revenue Code ("Code"), created a "new, one-time" tax that applied to U.S. shareholders who held previously untaxed foreign income in a foreign corporation. *See Moore v. United States*, 602 U.S. 572, 579 (2024). The tax functioned as a significant "part of the complicated transition" to a different approach to taxation of American-controlled foreign corporations. *Id.* at 580.

Under the pre-TCJA system, Congress generally treated foreign corporations, including American-controlled foreign corporations, as pass-through entities. *Id.* at 577. This meant "shareholders [we]re not taxed on the corporate income itself." *Id.* at 578. Instead, Congress, via Subpart F of the Code, "attribute[d] income of the corporation to American shareholders, and taxe[d] those American shareholders on that income." *Id.* at 579. The downside of this system was that it enabled American-controlled foreign corporations to "accumulate[] trillions of dollars in income abroad that went almost entirely untaxed by the United States." *Id.*

The TCJA reversed course. Its "primary goal was to encourage Americans who controlled foreign corporations to invest earnings from their foreign investments back in the United States instead of abroad." *Id.* The TCJA imposed the MRT as "a one-time, backward-looking tax on that accumulated income." *Id.* at 580. "Similar in structure to subpart F, the MRT attributed the long-accumulated and undistributed income of American-controlled foreign corporations to American shareholders, and then taxed those American shareholders on their *pro rata* shares of that long-accumulated income at a rate from 8 to 15.5 percent." *Id.* (citing I.R.C. § 965(a), (c)–(d)). The Supreme Court affirmed the lawfulness of this change in 2024, holding that MRT liability is income within Congress's authority to tax. *Id.* at 599–600.

To ease the MRT burden, Section 965(h) of the Code[2] allowed taxpayers to spread their MRT payments over eight years. The first installment was due on "the due date (determined without regard to any extension of time for filing the return) for the return of tax" for 2017. *Id.* § 965(h)(2). For Pitney Bowes and other U.S. shareholders of deferred foreign income corporations with a calendar year end, this meant April 17, 2018. *See* Mot. at 12. Subsequent installments were due on the due date for the tax return "for the taxable year following the taxable year with respect to which the preceding installment was made." I.R.C. § 965(h)(2).

Before the first MRT installment payment was due, the IRS published several informal documents containing instructions and explanations. In a Frequently Asked Questions publication ("FAQs") released on March 13, 2018, the IRS directed taxpayers to "make two separate payments as follows: one payment reflecting tax owed without regard to Section 965, and a second, separate payment reflecting tax owed resulting from Section 965." Mot. Ex. B at 7, ECF No. 17-2 (citation modified). The FAQs also instructed taxpayers to submit the MRT payment through wire with a five-digit code or, alternatively, via a check or money order labeled "2017 965 Tax." Mot. at 8.

Then, on April 13, 2018, four days before the first MRT installment was due, the IRS released a modified version of its FAQs. Mot. Ex. C, ECF No. 17-3. The additional instructions stated the IRS "will apply 2017 estimated tax payments first to a taxpayer's 2017 net income tax liability . . . [without regard to MRT liability], and then to its tax liability under [the MRT]." *Id.* at 8. Additionally, "the IRS announced for the first time that it would retain overpayments of regular income tax and apply them to MRT installments due in future years." Mot. at 8; *accord* Cross-Mot. at 5.

On August 2, 2018, "[i]n response to expressed concerns with the legal basis" of its previous guidance, the IRS issued a Program Manager Technical Advice Memorandum. Cross-Mot. at 10 (citing IRS Off. of Chief Counsel, *Program Manager Technical Advice Memorandum 2018-016* ("PMTA") (Aug. 2, 2018), https://www.irs.gov/pub/lanoa/pmta_2018_16.pdf). The PMTA stated:

> An overpayment does not exist with respect to a 2017 income tax liability unless and until the entire liability is fully paid, including any amount of that liability that is subject to an election to pay that income tax liability in installments under Section 965(h).

PMTA at 2 (citation modified). Put simply, a taxpayer with unpaid MRT liability could not have an overpayment.

2. Pitney Bowes's Tax Activity

For the 2017 tax year, Pitney Bowes owed $4,493,046 of regular income tax, excluding MRT liability. Compl. ¶ 24. Pitney Bowes overpaid this amount by $36,227,230. *Id.* ¶ 28.

---

[2] All subsequent references to "Section" refer to the corresponding section in Title 26 of the U.S. Code (i.e., the Internal Revenue Code). Similarly, all references to "Treasury Regulation" are to Title 26 of the Code of Federal Regulations (i.e., the Income Tax Regulations).

Additionally, in 2017, Pitney Bowes reported MRT liability of $24,390,637. *Id.* ¶ 29. The Code permitted taxpayers to spread their MRT payments across eight yearly installments. I.R.C. § 965(h). Pitney Bowes elected to do so. Compl. ¶ 30. Its first MRT installment payment for 2017 was scheduled to be $1,951,251. *Id.* ¶¶ 31–32. Rather than paying this amount, Pitney Bowes paid $3,000,000. *Id.* ¶ 33. In accordance with the IRS's informal guidance, Pitney Bowes labeled this MRT payment "using the 'designated payment code' of 09650." *Id.* ¶ 35. Pitney Bowes does not dispute that the $1,048,749 extra it paid above the $1,951,251 due for the first MRT installment was properly credited to its second MRT installment for 2018. *Id.* ¶ 36.

On its 2017 tax return, Pitney Bowes requested a refund of its $36,227,230 overpayment. *Id.* ¶¶ 37–38. However, the IRS made only a partial refund and retained $21,390,637—the amount of Pitney Bowes's remaining MRT liability. *Id.* ¶ 40. "The IRS then applied the excess amounts to the second through eighth installments (due in April 2019 through April 2025) and then credited the balance to plaintiff's 2018 tax year." Cross-Mot. at 8; *accord* Compl. ¶¶ 40–43.

Pitney Bowes claims the IRS should not have retained its tax overpayments and credited those payments against its MRT balance. *Id.* ¶ 3. Thus, Pitney Bowes seeks overpayment interest of at least $3,124,262.11, including additional interest that may accrue. *Id.* ¶¶ 48–49.

### B. Procedural History

Pitney Bowes filed its Complaint on April 14, 2025. The Government filed an Answer on August 15, 2025. ECF No. 10. After discovery, the Parties submitted a Joint Status Report that stated, "[T]he material facts of this case are undisputed." ECF No. 16 at ¶ 4. The Parties requested "the Court defer computation of interest owed to Plaintiff and entry of final judgment until after resolution of cross-motions for partial summary judgment as to liability." Mot. at 1 n.1 (citing ECF No. 16).

On April 6, 2026, Pitney Bowes filed a Motion for Partial Summary Judgment, arguing it is entitled to interest on its overpayments remitted for its 2017 tax liability. Mot. at 18, 37. It asserts "the IRS must pay interest to Plaintiff as compensation for the use of its money from the date of its overpayment (April 17, 2018) to the due date of each MRT installment against which Plaintiff's overpayment was credited." Mot. at 2.

The question presented by Pitney Bowes on summary judgment is:

> Whether Plaintiff is entitled to overpayment interest under section 6611, where (1) Plaintiff's estimated tax payments for the 2017 tax year exceeded Plaintiff's 2017 income tax liability computed without regard to the MRT; (2) Plaintiff elected under section 965(h) to divide its MRT into eight annual installments; [and] (3) the IRS credited Plaintiff's overpayment of 2017 regular income tax to satisfy MRT installments due in 2019 through 2025.

*Id.* at 2. In contrast, the Government summarizes the question for review as: "Are the installments of plaintiff's [Section 965(h)] net tax liability part of its entire income tax liability for tax year 2017?" Def.'s Reply ("Reply") at 1, ECF No. 23.

The Government argues that, historically, requirements to pay interest have been strictly construed in the Government's favor and a general waiver of sovereign immunity must be

accompanied by express congressional legislation requiring an award of interest. *Id.* at 12–13. Because there is no such waiver, the Government asserts that no interest is due, and Plaintiff's MRT liability should be considered part of its regular 2017 liability. *Id.* at 1. Pitney Bowes disagrees, contending overpayment-interest statutes provide a sufficient waiver of sovereign immunity. Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. & Reply in Opp'n to Def.'s Resp. ("Resp.") at 6–7.

The Parties' Cross-Motions for Summary Judgment are now ripe for review.

## II. Legal Standards

### A. Jurisdiction

The U.S. Court of Federal Claims has limited jurisdiction. *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). Here, Pitney Bowes asserts this Court has jurisdiction over its Section 6611 claims, which the Government does not dispute. Compl. ¶ 10; Ans. ¶ 10. The Court agrees it has jurisdiction over Pitney Bowes's claim for overpayment interest on tax payments and credits.

This Court possesses authority to review claims for money damages against the United States that are founded in statute. 28 U.S.C. § 1491(a)(1). The Tucker Act, however, "does not create a substantive cause of action," but requires a plaintiff to "identify a substantive source of law that creates the right to recovery of money damages against the United States." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d. 1338, 1343 (Fed. Cir. 2008). Claims for payment of interest by the Government are a special category of money damages. They are different, in part, due to the "historical view that interest is an element of damages separate from damages on the substantive claim." *Libr. of Cong. v. Shaw*, 478 U.S. 310, 314 (1986). Based on this understanding, the Supreme Court has adopted the "no-interest rule," which bars recovery of "interest . . . in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *Id.* at 311.

There is an express statutory waiver of sovereign immunity for interest on tax overpayment refunds. In creating this Court, "Congress retained the Government's immunity from awards of interest." *See id.* at 317. Yet it carved out a limited waiver "where expressly agreed to under contract or statute." *See id.* Section 6611 provides the needed authorization because it permits "the right to interest upon the refunded [overpayments of] taxes." *Brown & Williamson, Ltd. v. United States*, 688 F.2d 747, 752 (Ct. Cl. 1982) (denying motion to dismiss because the Court of Claims possesses jurisdiction over claims for tax-overpayment interest brought pursuant to Section 6611); *see also Schortmann v. United States*, 82 Fed. Cl. 1, 6 (2008) (finding every [court] that has considered whether Section 6611 authorizes interest on any overpayment has held that it does); *E.W. Scripps Co. & Subs. v. United States*, 420 F.3d 589, 597 (6th Cir. 2005) ("Congress, in enacting 26 U.S.C. § 6611 . . . has made clear that it believes that taxpayers should be compensated for the lost time-value of their money when they make an overpayment of tax.").

### B. Standard of Review

The Parties ask the Court to resolve cross-motions for summary judgment on the issue of liability. "A court may only grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Coca-Cola Co. v. United States*, 87 Fed. Cl. 253, 256 (2009); R. Ct. Fed. Cl. 56(a). No issue of material fact exists regarding liability, ECF No. 16 at ¶ 4, and the Cross-Motions seek a ruling on how to interpret the MRT's installment provisions. Such questions of statutory construction are "particularly suited to resolution through motions for summary judgment." *Magma Power Co. v. United States*, 101 Fed. Cl. 562, 568 (2011) (citation modified).

When Parties submit cross-motions for summary judgment, "rejecting one does not mean that the other is justified." *Res. Invs., Inc. v. United States,* 85 Fed. Cl. 447, 467 (2009) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968)). But motions for summary judgment "may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment is satisfied." *Intelligent Invs., Inc. v. United States*, 178 Fed. Cl. 143, 147 (2025) (citation modified) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The court must evaluate each motion on its own merits, taking care in each instance to view the evidence in favor of the nonmoving party." *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998).

### C. Tax Provisions

At issue here are the tax code provisions implementing the MRT. They establish the amount and process for payment of a corporation's pre-2018 deferred foreign income tax liability under subpart F of the Code. Also at issue are the overpayment and interest provisions that explain the IRS's authority to refund and credit overpayments as well as the provisions that define when the IRS owes interest on overpayment refunds. The relevant statutes are reviewed below.

#### 1. MRT Provisions

The MRT increases a company's "subpart F income," which is a category of foreign earnings defined in Section 952. I.R.C. § 965. The MRT provides:

> (a) In the case of the last taxable year of a deferred foreign income corporation which begins before January 1, 2018, the subpart F income of such foreign corporation (as otherwise determined for such taxable year under section 952) shall be increased by the greater of–
>
> > (1) the accumulated post-1986 deferred foreign income of such corporation determined as of November 2, 2017, or
> >
> > (2) the accumulated post-1986 deferred foreign income of such corporation determined as of December 31, 2017.

*Id.* Taxpayers can elect to pay their MRT liability in eight yearly installments, pursuant to Section 965(h)(1). The subsection provides MRT taxpayers "may elect to pay the net tax liability under this section" on the following schedule:

(A) 8 percent of the net tax liability in the case of each of the first 5 of such installments,

(B) 15 percent of the net tax liability in the case of the 6th such installment,

(C) 20 percent of the net tax liability in the case of the 7th such installment, and

(D) 25 percent of the net tax liability in the case of the 8th such installment.

*Id.* § 965(h)(1). Each installment "shall be paid on the due date . . . for the return of tax for the taxable year." *Id.* § 965(h)(2).

2. Overpayment and Interest Provisions

An overpayment is a prerequisite to Pitney Bowes's claim for interest. *See generally* I.R.C. § 6611. The Code contains no overarching definition of "overpayment," but a generally accepted definition can be drawn from caselaw and regulation. In *Jones v. Liberty Glass Co.*, the Supreme Court read the term to mean "any payment in excess of that which is properly due." 332 U.S. 524, 531 (1947); *see also Clintwood Elkhorn Mining Co. v. United States*, 473 F.3d 1373, 1376 (Fed. Cir. 2007) (following *Liberty Glass*'s definition of "overpayment"), *rev'd on other grounds*, 553 U.S. 1 (2008); *Gen. Elec. Co. & Subsidiaries v. United States*, 384 F.3d 1307, 1312 (same). That said, the Supreme Court found "no basis for making [overpayment] into a word of art." *Liberty Glass*, 332 U.S. at 532. An overpayment "may be committed by the taxpayer or by the revenue agents." *Id.* at 531. Further, Treasury Regulation § 301.6611-1 promulgates the principle, save for a few exceptions, that there "can be no overpayment of tax until the entire tax liability has been satisfied." Treasury Regul. § 301.6611-1(b).

Once the IRS identifies an overpayment, it may credit that overpayment and any interest allowed thereon "against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." I.R.C. § 6402(a). However, the IRS may only apply credits against liabilities that have come due. *See* Mot. at 22 (citing *Standard Oil Co. v. United States*, 5 F. Supp. 976, 988 (Ct. Cl. 1934); *Mann v. United States*, 44 F.2d 1005, 1009 (Ct. Cl. 1930)). "[A] credit cannot be applied upon an indebtedness that does not exist." *Standard Oil Co.*, 5 F. Supp. at 988. In *Mann*, for instance, the plaintiff erroneously filed its tax return as a calendar year return, instead of a fiscal year return. 44 F.2d at 1008–09. The Court decided the IRS could apply the payment to the last half of the calendar year and refund the excess because it had not yet become due. *Id.*

Of particular relevance here, the IRS may also credit overpayments against unpaid future installments. I.R.C § 6403. Section 6403 states that "if the taxpayer has paid as an installment of the tax more than the amount determined to be the correct amount of such installment, the overpayment shall be credited against the unpaid installments." *Id.* In addition, when the amount paid, "whether or not on the basis of installments, exceeds the amount determined to be the correct amount of the tax, the overpayment shall be credited or refunded as provided in Section 6402." *Id.* (citation modified).

If the IRS retains a tax credit where no outstanding liability exists, the taxpayer may have a right to interest. Section 6611 establishes when the Government owes interest on overpayments. For tax credits, "interest shall be allowed and paid . . . from the date of the overpayment to the due date of the amount against which the credit is taken." I.R.C. § 6611(b).

Section 6611 "must be strictly construed" as a waiver of sovereign immunity. *See Fed. Nat. Mortg. Ass'n v. United States*, 379 F.3d 1303, 1310 (Fed. Cir. 2004); *supra* Section II.A.

Taken together, Sections 6402 and 6403 provide for refunds of overpayments only after the IRS applies them to any outstanding liabilities, including installments. No overpayment can exist if a taxpayer still has outstanding liability.

## III. Discussion

Whether Pitney Bowes is owed overpayment interest turns on whether the IRS could have credited Pitney Bowes's payments for tax year 2017 toward its full MRT liability. The Government is correct that "[t]he outcome of the parties' cross motions turns on the answer to one dispositive question: Are the installments of plaintiff's Section 965(h) net tax liability part of its entire income tax liability for tax year 2017?" Reply at 1 (citation modified). There can be no tax overpayment on which the Government owes interest if Pitney Bowes's full MRT liability is included for tax year 2017. As explained further below, the Code provisions on overpayment interest, particularly Section 965(h), authorized the IRS to retain Pitney Bowes's overpayments for tax year 2017 and credit them toward the full unpaid MRT liability.

### A. Overpayment Credits (Sections 6402 and 6403)

The Code in Sections 6402 and 6403 allows the Government broad authority to retain overpayments and credit them toward outstanding tax liabilities. Both Sections support the IRS's decision to credit Pitney Bowes's 2017 overpayment to subsequent MRT installments.

Section 6403 narrowly focuses on refunds and credits of "a tax payable in installments."[3] I.R.C. § 6403. The Section provides that where a taxpayer "has paid as an installment of the tax more than the amount determined to be the correct amount of such installment, the overpayment shall be credited against the unpaid installments, if any." *Id.* The Section only directs the IRS to credit or refund any excess payments to the taxpayer "as provided in Section 6402" if the "amount already paid" exceeds "the amount determined to be the correct amount of the tax." *Id.* (citation modified).

The Government argues that paying the MRT in installments does not impact whether the sum of the installments composed the "correct amount of the tax," and "[Pitney Bowes's] total tax liability for 2017 was payable in eight separate installments." Cross-Mot. at 18. Thus, "[t]here could be no overpayment on which interest could accrue under Section 6611 until all eight installments were paid." *Id.* And as Section 6403 "makes clear[,] . . . an overpayment of

---

[3] Section 6403 provides in full:

> In the case of a tax payable in installments, if the taxpayer has paid as an installment of the tax more than the amount determined to be the correct amount of such installment, the overpayment shall be credited against the unpaid installments, if any. If the amount already paid, whether or not on the basis of installments, exceeds the amount determined to be the correct amount of the tax, the overpayment shall be credited or refunded as provided in section 6402.

an installment and an overpayment of tax are *not* the same." *Id.* (quoting I.R.C. § 6403). Because the entire MRT is part of Pitney Bowes's total tax liability for 2017, there could be no overpayment until the entire amount of the MRT (i.e., the sum of all installments) was paid.

Pitney Bowes reads Section 6403 as more restrictive. It contends that Section 6403 only allows the IRS to credit an overpayment to an installment if two criteria are met: "(1) that the tax at issue is a 'tax payable in installments,' and (2) that payment at issue was 'paid as an installment of the tax.'" Resp. at 12. Pitney Bowes grounds this interpretation in the amendments to Section 6403 and "[l]ongstanding Treasury Regulations." Mot. at 24. In its view, the Government meets neither criterion.

First, Pitney Bowes points to Section 965(h)(1)(A), which "defines the first MRT installment as 8% of the MRT." Only this 8% portion of the MRT is the amount paid as an installment, not, as the Government suggests, Pitney Bowes's "net 2017 tax liability computed without regard to Section 965, plus 8% of the Section 965 net income tax liability." Resp. at 12–13 (citing Cross-Mot. at 18). And if only the first MRT installment is "paid as an installment," Pitney Bowes contends it could not rely on Section 6403 to apply overpayments on non-Section 965 tax liability to Section 965. *Id.* at 12–13.

Second, Pitney Bowes argues it only made its "final estimated tax payment on June 15," six months before the enactment of Section 965(h). *Id.* at 12. It reasons that "the IRS expressly instructed taxpayers in the Original and Modified 2017 FAQs to pay the first MRT installment as a separate payment, vitiating any claim that the IRS considered any earlier payment of regular tax to have been 'paid as an installment of the tax.'" *Id.* (citing Original 2017 FAQs, at Q&A 10; Modified 2017 FAQs, at Q&A 10). The separate payments could indicate that the overpayment was not "paid as an installment of the tax," failing the second criterion.

Pitney Bowes's interpretation is too narrow. The Government has broad authority to credit Pitney Bowes's tax payments to unpaid installments regardless of their designation. Under Section 6315, payments of "the estimated income tax . . . shall be considered payment on account of the income taxes imposed by Subtitle A," within which the MRT is located, "for the taxable year." I.R.C. § 6315. Moreover, the second sentence of Section 6403 allows a credit or refund after "the amount already paid, whether or not on the basis of installments, exceeds the amount determined to be the correct amount of the tax." *Id.* § 6403. "Thus, there could be no overpayment of tax that could be credited or refunded—or on which interest could accrue—until after all eight installments had been paid." Resp. at 12 (citing *Estate of Bell*, 928 F.2d at 903–04).

Even assuming Section 6403 only allows credits to installments if payments are made on those installments, the Government has alternate authority to apply overpayments to unpaid MRT installments. Section 6403 directs overpayments made, "*whether or not on the basis of installments*," to "be credited or refunded as provided in section 6402." *Id.* § 6403 (emphasis added). Section 6402 then gives the IRS broad discretion to credit any such overpayment. It provides that "the Secretary . . . *may credit* the amount of [an] overpayment, including any interest allowed thereon, against any liability." *Id.* § 6402 (emphasis added). Courts have consistently recognized the IRS's broad discretionary authority under this provision, irrespective of Section 6403. *See Est. of McNeely v. United States*, No. 12-CV-1973 (SRN/JJK), 2014 WL 2617418, at *6 (D. Minn. June 12, 2014) ("Section 6402 and its related regulations demonstrate that Congress has granted the IRS discretionary authority to apply overpayments to *any* tax

liability." (emphasis added)); *Est. of Adell v. Commissioner*, 107 T.C.M. (CCH) 1463, at *5 (T.C. 2014) ("For a tax payable in installments, section 6403 provides that any overpayment of an installment must be applied first to any unpaid installments. If the amount of the overpayment exceeds the full amount of the tax due, then it may be credited or refunded as provided in section 6402.").

Pitney Bowes argues for a narrower reading of Section 6402, claiming that it "only authorizes the IRS to apply an overpayment against a tax liability that is currently due." Mot. at 22. For instance, in addressing a predecessor to Section 6402, the Court of Claims observed that "a credit cannot be applied upon an indebtedness that does not exist." *Standard Oil Co. (Ind.) v. United States*, 5 F. Supp. 976, 988 (Ct. Cl. 1934). Though Pitney Bowes had the option to delay payment under Section 965(h), its entire MRT liability was still part of a single tax year's liability. *See supra* Section II.A. And when it overpaid its regular taxes for 2017, the IRS was within its right to apply that overpayment to the MRT liability.

**B. MRT Installments (Section 965(h))**

The parties interpret Section 965(h) differently. Pitney Bowes argues its MRT liability is separate from its non-MRT liability for 2017. Mot. at 21–22. Consequently, it contends the Government improperly retained Pitney Bowes's overpayments from tax year 2017 and must therefore pay interest for the amount retained up to the due date of each installment. *Id.* at 29. By contrast, the Government asserts MRT liability is "an integral part" of Pitney Bowes's income tax liability in 2017. Cross-Mot. at 14. Accordingly, it argues the IRS properly applied credits for Pitney Bowes's 2017 income liability to its MRT liability, and the Government cannot owe interest until all installments have been paid. *Id.* at 2.

To resolve this dispute, the Court must first determine whether Section 965(h) has a "plain and unambiguous meaning with regard to the particular dispute in the case." *AD Glob. Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 481 F.3d 1351, 1353 (Fed. Cir. 2007) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). The Court finds Section 965(h) is unambiguous: Pitney Bowes's full MRT net tax liability counts toward its income tax liability for 2017.

1. Text and Structure

We start with the text. "The inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *AD Glob. Fund*, 481 F.3d at 1353 (citation modified). This is the case here.

"[T]he IRS imposes the income tax on gross income as a whole and assesses the tax due as a single liability." Cross-Mot. at 14. The MRT is "just one type of income that is included in a corporation's gross income and subject to tax." *Id.* As the Government notes, "Section 965 is contained within Chapter I, 'Normal Taxes and Surtaxes,' of Subtitle A, 'Income Taxes,'" which is "a part of the 'normal' income tax liability." *Id.* at 18.

Within this framework for "normal" income tax liability, Section 965 categorizes deferred foreign income as subpart F income. I.R.C. § 965(a). More precisely, subsection (a)

includes "the accumulated post-1986 deferred foreign income" of American-controlled foreign corporations (e.g., Pitney Bowes) in "the subpart F income" of those corporations. *Id.* The MRT's increase to subpart F income is "made in 'the last taxable year of a deferred foreign income corporation which begins before January 1, 2018,' *i.e.*, usually 2017 or 2018 for fiscal-year foreign corporations." Reply at 4 (quoting I.R.C. § 965(a)). Thus, absent an option to pay this amount in an installment, the statute includes the entire MRT liability in a payor's bill for a single tax year.

The installment plan allows MRT payors such as Pitney Bowes to space out their payments. Section 965(h) provides the basic instructions. U.S. shareholders of deferred foreign income corporations "may elect to pay" their "net tax liability under this section in 8 installments." I.R.C. § 965(h)(1). Notably, a taxpayer's "net tax liability," defined by Section 965(h)(6), is calculated based on a single "taxable year." *Id.* § 965(h)(6)(A). For this reason, Pitney Bowes reported its entire $24,390,637 MRT liability on its 2017 tax return, in addition to its "regular tax liability" of $4,493,046. Mot. at 3; Reply at 5.

Once an election is made, the statute directs that "the first installment shall be paid on the due date," irrespective of any extension of time for filing, "for the return of tax for the taxable year described in subsection (a)." I.R.C. § 965(h)(2). "[E]ach succeeding installment shall be paid on the due date" for each subsequent year's tax return. *Id.* While the statute provides when each installment "shall be paid," it does not expressly state whether each installment is included in gross income for a single year or each installment year. *See id.* § 965.

Congress knew how to include MRT installments in gross income for respective installment years. In Section 965(m), Congress provided special rules for real estate investment trusts ("REITs") to defer their MRT liability. A REIT that proceeded under these rules would "include[]" a portion of the MRT in their "gross income" for the eight *separate* years when the installments would be due. *See id.* § 965(m)(1)(B). Congress chose not to use this language in Section 965(h). The subsection further provides that its allocation of MRT liability across separate years would be "in lieu of the taxable year in which it would otherwise be included in gross income." *Id.* This language implies the baseline, as in Section 965(h), is that the MRT is included in gross income for a single year, regardless of whether it is paid in installments. *Id.*

Pitney Bowes argues "[n]o such inference should be drawn from the enactment of a special measure to address the complex and unique constraints imposed on REITs." Resp. at 11. In other words, REITs are special because they "received no distribution from the deferred foreign income corporation," and thus "Congress crafted a different election in Section 965(m), tailored to the rules governing REITs." Resp. at 11–12 (citation modified) (citing H.R. Rep No. 115-466, at 617 (2017) (Conf. Rep.)). But the Court must "generally presume differences in language like this convey differences in meaning." *Rudisill v. McDonough*, 601 U.S. 294, 308 (2024) (citation modified) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017)). And if Congress intended MRT installments to count toward gross income for each respective year the installments were due, it would not have needed the precise language in Section 965(m).

Pitney Bowes's discussion of acceleration events is also inapposite. Section 965(h)(3) does "identif[y] a discrete list of events that trigger acceleration of a U.S. shareholder's section 965(h) net tax liability, such as the sale of substantially all the assets of the taxpayer or cessation of business by the taxpayer." Mot. at 7. And following an acceleration event, "the unpaid

portion of all remaining installments shall be due on the date of such an event." I.R.C. § 965(h)(3). Pitney Bowes argues that this implies "no installment is 'due' prior to the installment payment date unless a specified acceleration event occurs." Mot. at 7. Not so. The analogy confuses the date when the IRS may demand payment for all the unpaid installments (i.e., after an acceleration event) with the date when net tax liability is included in a taxpayer's gross income (i.e., "the last taxable year of a deferred foreign income corporation which begins before January 1, 2018"). *See* I.R.C. § 965(a).

Nowhere in Section 965 does Congress specify that each MRT installment is included in gross income for the respective tax year. This omission paired with an express inclusion for REITs strongly supports that the entire MRT liability is due in a single tax year.

2. "Shall be Paid" Versus "Due"

Pitney Bowes asks the Court to read the Section 965(h) direction that a taxpayer's MRT liability "shall be paid" in each installment year as meaning it is not "due" until that year. *See* Resp. at 7–8. In its view, the Section "specifies the date on which an installment is due, rather than providing a mere extension of the date payment is required." *Id.* However, had Congress intended to make installments "due" in later years, it could have said so. It did not.

The "shall be paid" language in Section 965(h) is not novel. The Government identifies three tax installment cases with comparable language: *Birkenstock*, *Matson*, and *Estate of Bell*.

At issue in *Birkenstock* was a section of the Revenue Act of 1918 that provided "the tax *shall be paid* in four installments." *Blair v. United States ex rel. Birkenstock*, 271 U.S. 348, 351–52 (1926) (emphasis added). The Supreme Court held this language did not warrant a refund or interest on "the payment of a lesser amount which is in excess of the required quarterly installments." *Id.* at 353. The Court found it persuasive that the statute contained "no provision for a refund to the taxpayer of any excess payment of a quarterly installment, when the whole tax for the year has not been paid." *Id.* "[T]he mere overpayment of an installment is treated as a payment on account of the tax which is assessed for that year, and is not a 'tax erroneously or illegally assessed or collected' within the meaning of the [relevant] refund provisions." *Id.*

Similarly, in *Matson*, the Court of Claims interpreted Section 56 of the Internal Revenue Code of 1939 which "allowed taxpayers 'to elect to pay' taxes under Chapter 1 of that Code 'in four equal installments' with specified dates on which each installment '*shall be paid*.'" Cross-Mot. at 20–21 (emphasis added). As the court held, when those taxes were "paid in installments, there is no overpayment of taxes until the date that the total amount of the installments paid first exceeds the total amount of tax due." *Matson Navigation Co. v. United States*, 131 Ct. Cl. 199, 201 (1955) (citing *Birkenstock*, 271 U.S. 348).

And in *Estate of Bell*, the Court of Appeals for the Ninth Circuit permitted the Commissioner to "appl[y] the overpayment of the previously-due installments to installment payments due in the future." Mot. at 22 (citing *Est. of Bell v. Commissioner*, 928 F.2d 901, 904 (9th Cir. 1991)). The estate tax provision at issue provides the dates on which "the first installment shall be paid" and "each succeeding installment shall be paid." I.R.C. § 6166(a)(3).

Pitney Bowes attempts to distinguish *Estate of Bell* and *Birkenstock*, claiming they "addressed a different legal question." Resp. at 13–15. It argues, for both cases, "the issue was

whether the overpayment of an amount paid *as an installment* of a tax that the taxpayer elected to pay in installments obligated the government to pay overpayment interest or issue a refund, respectively." *Id.* at 14–15 (emphasis added). And here, Pitney Bowes contends "Section 6403 does not apply." *Id.* at 15 (citation modified).

Alternatively, Pitney Bowes suggests that "shall be paid" cannot mean payment was "due" because Congress has elsewhere referenced tax being "due and payable." *See* Resp. at 7–8 & 8 n.2 (collecting statutory provisions with the phrase). The Treasury and the IRS, too, have regularly used the term. *See id.* at 8 & n.3 (collecting regulations with the phrase). "If as Defendant contends, the date on which an amount is due 'is functionally the same' as the date on which it is payable, one of the words—'due' or 'payable'—would be rendered meaningless in [section 965(h)] and regulations." *Id.* at 8 (quoting Cross-Mot. at 16, 21). This Court does "give effect, if possible, to every clause and word of a statute." *Id.* (quoting *Advocate Health Care Net. v. Stapleton*, 581 U.S. 468, 478 (2017)). And "the repeated use of the phrase 'due and payable' in the Code and the regulations thereunder leads inescapably to the conclusion that an amount may, in certain circumstances, be due but not yet payable." *Id.*

This argument misses the mark. Section 965(h) includes neither the term "due" nor "payable," much less both together. The statute instead states that MRT liability "shall be paid" on each installment date. And prior caselaw has recognized that "the phrase 'shall be paid' . . . is not at all the same as 'payable.'" Reply at 7–8. The Government cites *In re Senczyszn* for its comparable delineation of the phrases "become payable" and "must be paid." *Id.* (citing 444 B.R. 750, 757–61 (2011)). This Court, too, reads the phrases differently: "shall be paid" is synonymous with an installment's due date.

Treasury Regulations interpreting Section 965(h) add yet another wrinkle. Pitney Bowes argues "[t]he regulations confirm that section 965(h)(2) alters the *due date*." Resp. at 7. Treasury Regulation § 1.965-7(b)(1)(iii) replaces the statutory language that installments "shall be paid on the due date" with the language that "[e]ach succeeding installment payment is due on the due date." *Compare* I.R.C. § 965(h) ("[T]he installment shall be paid on the due date . . . ."), *with* Treasury Regul. § 1.965-7(b)(1)(iii) ("Each succeeding installment payment is due on the due date . . . ."). But the Court must avoid reading the regulation in a way that conflicts with the statute. *See Tr. of Ind. Univ. v. United States*, 618 F.2d 736, 739 (Ct. Cl. 1980) ("[A] regulation must be interpreted so as to harmonize with, further, and not conflict with the objective of the statute it implements." (citation modified)); *see also Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024) ("In the business of statutory interpretation, if [an agency's interpretation of a statute] is not the best, it is not permissible."). And "if this semantic difference had the effect that plaintiff proposes, then the regulation and statute would conflict, and plaintiff's interpretation should be disregarded on that basis." *Id.*

Pitney Bowes is correct that word choice matters. Here, however, the statute's language further supports the Government's interpretation of Section 965(h).

3. Legislative History

While the text here is enough to find in the Government's favor, the legislative history is also consistent with this outcome.

Pitney Bowes references legislative history to provide the context for the MRT installment plan. At the time of implementation, Congress recognized "that many foreign subsidiaries had 'reinvested' their 'accumulated foreign earnings' in 'the foreign subsidiary's business' and certain earnings were not 'held in liquid form.'" Mot. at 6 (quoting S. Prt. No. 115-20, at 363 (2017)). Some companies facing a significant liability could struggle to meet their tax liability in one year. Reply at 6 (quoting H.R. Rep. No. 115-466 at 613–14 (2017) (Conf. Rep.)).[4] Hence, Congress offered payors an option to spread their installments across eight years. *See* I.R.C. § 965(h).

An additional benefit of expressly providing for installment payments is that "the timely payment of an installment under Section 965(h) does not incur underpayment interest." H.R. Rep. No. 115-466, at 611, 616 (2017) (Conf. Rep.) (citation modified). The Joint Committee on Taxation, for instance, affirms "[t]he timely payment of an installment [under Section 965(h)] does not incur interest." J. Comm. Tax'n, General Explanation of Public Law 115-97, JCS-1-18, at 364 (Dec. 2018). The D.C. District Court reached a similar conclusion. *See Silver v. IRS*, 531 F. Supp. 3d 346, 352 (D.D.C. 2021).

Therefore, rather than establishing that Congress intended Section 965(h) to defer the ultimate tax liability across each installment year, the legislative history suggests the opposite. In particular, the Conference Committee Report explains taxpayers such as Pitney Bowes will include their Section 965 liability in subpart F income for a single year. H.R. Rep. No. 115-466, at 613–14 (2017) (Conf. Rep.).

4. *Fruehauf Corp. v. United States*

Pitney Bowes argues *Fruehauf Corp. v. United States*, 477 F.2d 568 (Ct. Cl. 1973), supports its reading of Section 965. It relies on the case for the proposition that "deficiency interest imposed with respect to a tax year was not part of the 'entire tax liability' for that year, because, under existing law, the deficiency interest was not *due* until it was assessed." Mot. at 12 (citing *Fruehauf*, 477 F.2d at 570–71). And under Pitney Bowes's reading, "the subsequent MRT installments were not due until the dates set forth in Section 965(h)(2)." Resp. at 4. Thus,

---

[4] Quoted in full, the Report provides:

> The mechanism for the mandatory inclusion of pre-effective-date foreign earnings is subpart F. The provision provides that in the last taxable year of a deferred foreign income corporation that begins before January 1, 2018, . . . the subpart F income of the foreign corporation is increased by the greater of the accumulated post-1986 deferred foreign income of the corporation . . . . The amount so determined is includible in gross income under section 951 (hereinafter, "the section 951 inclusion"). . . . Consistent with the general operation of subpart F, each U.S. shareholder of a deferred foreign income corporation must include in income the shareholder's pro rata share of the foreign corporation's subpart F income attributable to its section 951 inclusion.

Reply at 6 (quoting H.R. Rep. No. 115-466 at 613–14 (2017) (Conf. Rep.)).

"[p]roperly applied, Treas. Reg. § 301.6611-1 establishes that Plaintiff overpaid its 'entire tax liability' for 2017, because its payments exceeded the amount due on April 17, 2028." *Id.*

In *Fruehauf*, the IRS discovered and assessed a taxpayer's deficiency for tax year 1963 following an audit conducted in 1969. 477 F.2d at 569. Interpretation of "the term 'entire tax liability,' as used in section (b)" of a Treasury Regulation was "crucial to the decision in th[e] case." *Id.* at 570. The Government argued "the term . . . includes interest, whether assessed or unassessed," and no overpayment interest could collect until after the underpayment interest assessment was satisfied. *Id.* But the Claims Court found otherwise. *Id.* Section (h) of the regulation established that "until the due date of the interest (the date of the assessment of the interest), there is no tax liability." *Id.* Accordingly, "there was no liability for the interest on the potential deficiency and consequently no mutuality of indebtedness until that interest was assessed," which did not happen until 1969. *Id.* at 573.

But *Fruehauf*'s holding is distinguishable from the question now presented. Most importantly, *Fruehauf* interpreted a provision of a then-in-effect but later-amended regulation governing underpayment interest. *See id.* at 570–71. Here, whether MRT installments are included in Pitney Bowes's 2017 tax liability can only be discerned from the text of Section 965 itself, on which *Fruehauf* has no bearing.

The practical issues raised in *Fruehauf* are also distinguishable. There, "[p]rior to assessment, the liability for deficiency interest was only a contingency." *Id.* at 570. That is, a taxpayer did not know whether the IRS would assess deficiency interest until it was assessed. But in this case, Pitney Bowes's future net tax liability under Section 965(h) was fixed at the time it filed its 2017 tax return. Thus, Pitney Bowes's reliance on *Fruehauf* is misplaced.

5. Underpayment Interest

Pitney Bowes contends the lack of underpayment interest on MRT installment payments would create unnavigable inconsistencies. Mot. at 15–20; Resp. 9–12. In its view, the Government cannot have it both ways: it cannot deny that Section 965(h) requires underpayment interest but also find the Section permits regular income tax overpayments to be credited toward future installment payments. This reasoning is unpersuasive.

Late tax payments are penalized under Section 6601(b)(1) with an interest charge assessed "without regard to any extension of time." *See* Mot. at 13. It stands to reason then that a tax assessed in a single year but paid over several years would accrue underpayment interest until it was fully paid off. But for payments made in later tax years using the MRT installment option, no underpayment interest accrues. *Id.* at 16. Pitney Bowes contends several other statutes have been found to impose underpayment interest on the taxpayer when installment payments are made after the year in which the full tax is assessed. *See id.* at 16–18 (discussing underpayment penalties for Estate Taxes under Section 6166 and Corporate Income Taxes under Section 6152).

The Government responds that "Section 6601(b)(1) makes *no* reference to installment payments that are due under Section 965(h)(2)," and Congress chose not to levy underpayment interest on Section 965 installments. Reply at 8 (citation modified). In fact, underpayment interest and overpayment interest are governed by two statutes (i.e., Sections 6601 and 6611, respectively), which differ in both language and implication. *Id.* at 9. *Marsh & McLennan Cos.*

*v. United States* provides further support, as it specifies that "the tax code differentiates between underpayment and overpayment interest situations," and overpayments "do[] not . . . require identical treatment." 302 F.3d 1369, 1378–79 (Fed. Cir. 2002).

Thus, because underpayment interest is neither a requirement for overpayment interest nor an express component of the Section 965(h) scheme, Pitney Bowes's challenge fails.

### C. Other Arguments

Pitney Bowes emphasizes that the IRS did not announce overpayments would be retained until April 13, 2018, four days before the first MRT due date of April 17, 2018. Mot. at 7–9. Further, Pitney Bowes paid its 2017 regular income tax and elected to credit overpayments on June 15, 2017, several months before receiving guidance on MRT liability. Resp. at 13. Taxpayers, such as Pitney Bowes, that "had elected to apply overpayments of 2017 regular income tax toward 2018 estimated taxes," therefore "faced a shortfall in their 2018 estimated payments, because the IRS had detained the funds to satisfy installments of the MRT not yet due." Mot. at 9. This argument raises legitimate concerns with the IRS's rollout of the MRT. But despite the IRS's belated guidance, the Court is bound to follow statutory provisions when they are "coherent and consistent," *AD Glob. Fund, LLC*, 481 F.3d at 1353, as they are here.

Pitney Bowes also points out that the IRS instructed taxpayers to pay the MRT using a special tax code. Mot. at 28 (citing the IRS's March 13, 2018, FAQs, Mot. Ex. B at 6–7). Pitney Bowes goes on to argue, "Separate payments would not have been necessary if the 2017 regular income tax was a tax payable in installments, and if all payments of regular income tax for 2017, including 2017 estimated payments, were paid as installments of such tax." *Id.* But that supposition is misplaced. The IRS could design a system for installment payments on MRT liability to accommodate a taxpayer and still assess the total MRT liability in a single year when that taxpayer has a balance from overpayments for that year. Indeed, that very structure is anticipated in Section 965.

## IV. Conclusion

As analyzed above, Plaintiff's total MRT liability constituted part of its 2017 income tax liability, and the IRS therefore validly applied its overpayments to the outstanding MRT liability without an award of interest. Accordingly, the Court **GRANTS** Defendant's Cross-Motion for Summary Judgment. ECF No. 19. The Court **DENIES** Plaintiff's Motion for Partial Summary Judgment. ECF No. 17. The Clerk is directed to enter judgment.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge